JUDE G. GRAVOIS, Judge.
[sin this suit, plaintiffs, C & V Enterprises, Inc., Riverbend Shell, Inc., and Victory Fuel Enterprises, L.L.C., all former Shell-branded retail service station lessees who had gasoline supply contracts and leases with the owner of the stations, defendant, LavigneBaker Petroleum, L.L.C. (“LBP”), sued defendant for damages for alleged breach of contract, unjust enrichment, and violations of the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401 et seq.[1] Plaintiffs alleged that during the time they leased the stations, LBP overcharged them for gasoline purchases under the supply contracts when LBP failed to pass on various tax credits to plaintiffs. In response, LBP filed, among other exceptions, an exception of no right of action, arguing that when plaintiffs executed assignments of the supply contracts to the new lessees of the stations, the assignments were of “all rights” under the supply contracts, and as such, plaintiffs failed to reserve any rights under the supply contracts whatsoever, including the right to sue LBP for the alleged causes of action that arose prior to execution of the assignments of the |4contracts.[2] Finding that the assignments were unambiguous and total, the trial court granted LBP’s exception of no right of action. Further, based on its finding that the language in the assignments was unambiguous, the trial court did not allow plaintiffs to introduce parol evidence to explain the terms of the assignments, which plaintiffs proffered instead. This appeal by plaintiffs followed. For the following reasons, we reverse.

ASSIGNMENTS OF ERROR

In their first assignment of error, plaintiffs argue that the trial court erred in maintaining LBP’s exception of no right of action, and in dismissing all claims of plaintiffs. In this assignment, plaintiffs essentially claim that their rights to sue LBP for damages arising from the breach of the supply contracts are strictly personal, and therefore were not assignable as a matter of law. Plaintiffs also appear to argue alternatively that the rights were personal in nature (not strictly personal) and could not be assigned unless the assignments were express. Plaintiffs also argue that because the assignment agreements failed to mention these rights, they were accordingly not expressly assigned therein to the new lessees, and thus were retained by plaintiffs.
In their second assignment of error, plaintiffs argue that the trial court erred in denying the admission of parol evidence in the testimony of plaintiffs representative, John K Roberts, III, to explain the terms of the assignment agreements. As part of this assignment, plaintiffs also argue that the trial court erred in allowing LBP to object to the admission of the parol evidence testimony, as it lacked standing to object because it was not a party to the assignment agreements.

J¿FIRST ASSIGNMENT OF ERROR— Exception of No Right of Action

A peremptory exception pleading the objection of no right of action tests whether the plaintiff has any interest in judicially enforcing the right asserted. Simply stated, the objection of no right of action tests whether a particular plaintiff, as a matter of law, has an interest in the claim sued on. Louisiana State Bar Ass’n v. Carr and Associates, Inc., 08-2114 (La.App. 1 Cir. 5/8/09), 15 So.3d 158. The determination of whether a plaintiff has a right of action is a question of law that is reviewed de novo on appeal. Caro Proper *1110 ties (A), L.L.C. v. City of Gretna, 08-248 (La.App. 5 Cir. 12/16/08), 3 So.3d 29.
La. C.C.P. art. 698, a procedural article that concerns the capacity to sue, states that an incorporeal right which has been assigned, whether unconditionally or conditionally for purposes of collection or security, shall be enforced judicially by the assignor and the assignee, when the assignment is partial, or the assignee, when the entire right is assigned.
La. C.C. art. 2642 provides that any right may be assigned except those pertaining to obligations that are strictly personal. Whether an obligation is strictly personal is defined in La. C.C. art. 1766, which provides:
An obligation is strictly personal when its performance can be enforced only by the obligee, or only against the obligor.
When the performance requires the special skill or qualification of the obli-gor, the obligation is presumed to be strictly personal on the part of the obli-gor. All obligations to perform personal services are presumed to be strictly personal on the part of the obligor.
When the performance is intended for the benefit of the obligee exclusively, the obligation is strictly personal on the part of that obligee.
La. C.C. art. 1765 defines “heritable” or “transferable” obligations as follows:
IfiAn obligation is heritable when its performance may be enforced by a successor of the obligee or against a successor of the obligor.
Every obligation is deemed heritable as to all parties, except when the contrary results from the terms or from the nature of the contract.
A heritable obligation is also transferable between living persons.
Accordingly, this Court must first consider the nature of plaintiffs’ rights under the supply contracts and whether those rights were subject to assignment.
Both parties cite Eagle Pipe and Supply, Inc. v. Amerada Hess Corp., 10-2267 (La.10/25/11), 79 So.3d 246, in support of their positions. In that case, the Supreme Court engaged in an extensive analysis of prior jurisprudence to find that the fundamental principles of Louisiana property law required the conclusion that under the “subsequent purchaser rule,” an owner of immovable property has no right or actual interest in recovering from a third party for damage that was inflicted on the property before his purchase, in the absence of an explicit assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted.[3] Much of the analysis in Eagle Pipe concerned the interplay of property law with the law of obligations, and therefore is not directly pertinent to the factual circumstances here. Eagle Pipe did, however, note that a personal right is effective only between the parties, as contrasted with a real right, which can be asserted against the world. La. C.C. art. 1758; Eagle Pipe, supra, at 262. While a strictly personal right may not be assigned, a personal right may be assigned but cannot be asserted by another in the absence of an assignment or 17subrogation. Eagle Pipe, supra at 262; La. C.C. art. 1764, Revision Comments— 1984, (d) and (f).
LBP also cites Caro Properties, supra, wherein this Court held that an agreement *1111 between a building owner and its insurer, whereby the building owner assigned to the insurer “any rights [it had] to pursue recovery from any responsible party including those responsible or at fault in connection with the demolition of the building,” was a full assignment of rights rather than a subrogation agreement. Id. at 31 (emphasis added). This Court further held that the assigned rights, which sounded in tort, were not strictly personal in nature and therefore were assignable. This Court sustained a grant of an exception of no right of action against the plaintiff, specifically finding that the plaintiff had clearly assigned the rights it was suing for to the insurer. Id. at 82.
At least one court has found that supply contracts contain personal, heritable obligations, rather than strictly personal obligations, and are, hence, assignable. In Re Cajun Elec. Power Co-op., Inc., (Bkrtcy.M.D.La.1999), 280 B.R. 693.
Given the nature of the supply contracts and the rights and obligations contained therein, we find that they are not strictly personal in nature, and therefore may be assigned.[4]
The next question thence is: In the assignment agreements, did plaintiffs assign the causes of action sued upon herein — the right to sue for any alleged breaches of the covenants, duties, and obligations arising under the contracts occurring prior to execution of the assignments — to the assignees (the new lessees of the stations)?
| sThe interpretation of a contract is the determination of the common intent of the parties. La. C.C. art.2045. For purposes of interpreting a contract, a contract is “ambiguous” when it lacks a provision bearing on the issue, its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions, or the parties’ intent cannot be ascertained from the language used. Sequoia Venture No. 2, Ltd. v. Cassidy, 42,-426 (La.App. 2 Cir. 10/10/07), 968 So.2d 806, writ denied, 972 So.2d 1166, 07-2210 (La.1/11/08). The common intent of the parties to a contract is determined in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. Prejean v. Guillory, 10-0740 (La.7/2/10), 38 So.3d 274, rehearing denied, 10-0740 (La.9/17/10), 45 So.3d 1035. Although parol evidence is inadmissible to vary the terms of a written contract, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties. Brandner v. Staf-Rath, L.L.C., 10-778 (La.App. 5 Cir. 4/26/11), 64 So.3d 812, unit denied, 11-1085 (La.9/2/11), 68 So.3d 523.
Three assignment agreements were introduced into evidence by LBP.[5] The pertinent language is the same in each of the three contracts:
..., Assignor does hereby assign, transfer, set over and convey unto As-signee, all of Assignor’s rights, title and interest, as Purchaser or Lessee in and to the following described contracts ... (hereinafter sometimes collectively referred to as the “Contracts”), to wit:

*1112
[The “following described contracts” mentioned above are the Contract of Sale (Branded), where Assignors had the status/capacity as Purchasers, and the Station Lease contract, where Assignors had the capacity as Lessees.]

|nTo have and to hold the same unto Assignee, its successors and assigns, forever.
Assignee hereby acknowledges and it hereby assumes the Contracts and agrees that it shall be hable to [LBP], the current Seller or Lessor under the Contracts, and its successors and assigns, to perform and comply with each and every one of the covenants, duties, and obligations of Purchaser or Lessee arising under the contracts on and after the Effective Date of this Assignment. Assignor hereby acknowledges that it remains liable for every one of the covenants, duties, and obligations of Purchaser or Lessor arising under the Contracts and is not released from any obligations arising under the Contracts .... Assignor and Assignee hereby further acknowledge and agree that upon execution of this Assignment and continuing for the remainder of the term of the Contracts, they shall each be jointly, severally and solidarily liable and responsible to LBP for the full, faithful and timely performance and discharge of each and every covenant, duty, and obligation of Purchaser or Lessee under the Contracts.
The Assignor and Assignee acknowledge that the assignment of the Contracts contained herein will not be effective until LBP executes a Consent to Assignment.
(Emphasis added.)
Although the first sentence of the language quoted above states that Assignors (plaintiffs) assigned “all of Assignor’s rights, title and interest, as Purchaser or Lessee in and to the following described contracts ... ”, plaintiffs argue that later language in the assignment agreements, also quoted above, limits or curtails their assignment of rights. They argue that the later language — that plaintiff(s) shall remain “liable for every one of the covenants, duties, and obligations of Purchaser or Lessor arising under the Contracts and is not released from any obligations arising under the Contracts” — had the effect of retaining to them the rights to sue for any alleged breaches of those covenants, duties, and obligations arising under the contracts occurring prior to execution of the assignments.
We find that the language assigning each assignor’s rights as purchaser “in and to the ... contracts” unambiguously includes all future rights and obligations [ mthat arise under the contracts. The assignment agreements are, however, unambiguously silent on the issue of whether assignors also assigned their personal rights that are the causes of action involved in this case — the right to sue for any alleged breaches of the covenants, duties, and obligations arising under the contracts occurring prior to execution of the assignments. In the face of this silence, this Court should not infer that plaintiffs intended to also transfer these personal rights to the assignees of the contracts. La. C.C. art.2051. Plaintiffs’ rights of action to sue for alleged violations of the contracts occurring prior to execution of the assignments are plaintiffs’ personal rights that accrued to them prior to execution of the assignments. We find that these causes of action are distinct from plaintiffs’ rights “in and to” their future rights and obligations arising under the contracts that were clearly assigned by plaintiffs in the assignments.
We also find that Caro Properties, supra, actually supports plaintiffs’ position. *1113 In Caro Properties, the assignment was specifically and explicitly of exact rights, i. e., “any rights [it had] to pursue recovery from any responsible party including those responsible or at fault in connection with the demolition of the building,” that the plaintiffs argued they had retained and for which they had filed suit. In the instant case, the assignment of rights was nonspecific and did not specifically include the assignment of the rights upon which plaintiffs now sue LBP. Unlike the assignment in Caro Properties, the assignments under review here fail to specifically and explicitly address the assignment of any personal rights accruing to plaintiffs arising under the contracts prior to execution of the assignments.
Finding for the foregoing reasons that plaintiffs have a right of action to sue LBP for any alleged breaches of the covenants, duties, and obligations arising | n under the contracts occurring prior to execution of the assignments, we reverse the trial court’s grant of LBP’s exception of no right of action.

SECOND ASSIGNMENT OF ERROR— Parol Evidence Issues

In this assignment of error, plaintiffs argue that the trial court erred in finding the assignment agreements unambiguous and therefore in not allowing them to introduce parol evidence to explain the terms of the assignment agreements. In this assignment of error, plaintiffs also argue that the trial court erred in allowing LBP to object to the introduction of the parol evidence testimony at issue (the testimony of Mr. Roberts), as it lacked standing to object because it was not a party to the assignment agreements. Because we have found that the assignment agreements were not ambiguous, in that they did not specifically include assignments of plaintiffs’ personal rights to sue for alleged violations of the contracts occurring prior to execution of the assignments, it is of no moment that the trial court did not allow plaintiffs to introduce parol evidence to explain the terms of the assignment agreements.[6] Therefore, this assignment of error is now moot.

CONCLUSION

For the reasons assigned herein, we reverse the trial court’s grant of LBP’s exception of no right of action. We remand the matter for proceedings consistent with this opinion.

REVERSED

. The plaintiff entities are all owned by John K. Roberts, III.

. The assignment agreements were executed in April of 2011. Plaintiffs filed this suit against LBP in May of 2011.

. The issue involved in Eagle Pipe was "whether a subsequent purchaser of property has the right to sue a third party for non-apparent property damages inflicted before the sale in the absence of the assignment of or subrogation to that right." In answering this issue, the majority opinion in Eagle Pipe found that "the fundamental principles of Louisiana property law compel the conclusion that such a right of action is not permitted under the law.” Eagle Pipe, supra, at 252.

. As this Court pointed out in Caro Properties, there are some rights of action that cannot be transferred through assignment or subrogation, such as the right to sue for personal injury, but those are not applicable in this case. Caro Properties, supra, at 33-34.

. Each plaintiff is an assignor of its particular supply contract and contract of lease to its successor purchaser and lessee, who are not patties to this suit.

. Mr. Roberts' testimony, which was proffered by plaintiffs, basically stated that when negotiating the contracts, the parties "did not mention” the breach of contract rights that plaintiffs now seek to enforce against LBP. He also testified that after the assignment of rights, plaintiffs and LBP continued to account to each other for all pre-assignment trade balances.