NIJEL YOUNG

VERSUS

HARD ROCK CONSTRUCTION, L.L.C.,
HARD ROCK CONSTRUCTION OF
LOUISIANA, L.L.C., AND ALL SOUTH
CONSULTING ENGINEERS, L.L.C.

NO. 19-CA-484

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 68,583, DIVISION "C"
HONORABLE J. STERLING SNOWDY, JUDGE PRESIDING

March 17, 2020

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Stephen J. Windhorst

**<u>AFFIRMED</u>**
   **JGG**
   **SMC**
   **SJW**

COUNSEL FOR PLAINTIFF/APPELLANT,
NIJEL YOUNG
 Harry E. Forst

COUNSEL FOR DEFENDANT/APPELLEE,
ALL SOUTH CONSULTING ENGINEERS, L.L.C.
 David K. Persons

**GRAVOIS, J.**

This case arises out of an accident at a construction site at East St. John High School, in LaPlace, Louisiana, owned by the St. John the Baptist Parish School Board. Plaintiff, Nijel Young, was injured when the walls of a trench in which he was laying drainage pipe collapsed. He sued both his employer, Hard Rock Construction LLC/Hard Rock Construction of Louisiana, LLC ("Hard Rock"), and All South Consulting Engineers, LLC, the engineering and construction management firm hired by the School Board to provide engineering and construction management services to the project.[1] Ultimately, the trial court granted summary judgment in favor of All South, finding that no genuine issues of material fact existed as to All South's non-liability to plaintiff under the explicit provisions of All South's contract with the School Board, and that All South was entitled to judgment as a matter of law. This appeal followed. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On the date of the accident, October 20, 2014, plaintiff was employed as a laborer by Hard Rock, the contractor, who had entered into a contract with the School Board to install sections of 48-inch underground drainage pipes at East St. John High School. The School Board also contracted with All South to provide engineering and construction management services at the construction site.[2]

All South's construction manager for this job, Scott Greig, testified in his deposition that his job was observing the work of the contractor, and to make sure that the work proceeded according to the plans and specifications of the contract between Hard Rock and the School Board, as well as to monitor the construction's

---

[1] Hard Rock was dismissed from this tort suit after summary judgment was rendered in Hard Rock's favor, finding that plaintiff's exclusive remedy against Hard Rock was workers' compensation. Thus, the remainder of this opinion will pertain to plaintiff's case against All South.

[2] The trial court's reasons for judgment erroneously state that All South was hired by Hard Rock.

progress and the delivery and use of construction materials. Mr. Greig testified that All South's job was to be present, but not in communication with the contractor unless they observed something not being done to standards or the contract specifications. Mr. Greig's job duties also included overseeing All South's inspectors at other jobsites.[3] The onsite inspector for this particular site was Gerard Kelly, who reported to Mr. Greig and who had over 30 years' experience in construction and around six years' experience as an inspector. Because Mr. Greig had been at another site in the morning, he did not arrive at the East St. John site until the afternoon, at around 2:00 p.m., where Mr. Kelly had been present observing Hard Rock's trench crew since the beginning of the work day. Mr. Kelly left shortly before the accident, after conferring with Mr. Greig about the work performed by the trench crew that day.

The accident which injured plaintiff occurred on the first or second day of work at the site at around 3:00 p.m. (witness testimony varied as to the exact time, but all agreed it was in the afternoon), where Hard Rock was installing 8-foot-long sections of 48-inch underground cement drainage pipes in a trench. Installation of the pipe sections involved digging a trench and preparing the bedding soil according to contract specifications on which the pipe would lay, and laying the pipe. Mr. Young was injured when the trench in which he was working caved in or collapsed.[4]

---

[3] Though Mr. Greig was an engineer by education, he emphasized in his deposition that he was not licensed in Louisiana, nor was he the All South "engineer" referred to by plaintiff, and that he was not employed by All South to perform any engineering services on this job. The All South project engineer was Chris Sanchez. No All South witness identified Mr. Sanchez as being present on the subject site that day.

[4] OSHA cited and fined Hard Rock for an OSHA violation regarding the trench following plaintiff's injury. The OSHA notice of violation, found in the record, stated that the trench was at least 8 feet deep. It appears that the depth of the trench varied, though this fact is not material to the issue in this appeal.

Testimony indicated that the trench plans may not have been stamped by an engineer, but the record is unclear as to whether the trench was of sufficient depth for OSHA to require such an engineering stamp. This fact is also not material to the legal issue in this appeal.

According to plaintiff, Mr. Greig, and Mr. Kelly, earlier that day, George Gautreaux, who was Hard Rock's crew foreman and whom Mr. Greig described as the "trench expert," called "Carl," Hard Rock's owner, to request a metal "trench box," because he felt that the shoring system being used by the crew to secure the trench from cave-ins was not adequate, as the crew had experienced minor cave-ins several times already that day.[5] A trench box is a metal device with sides and lateral bracing used to shore the trench to protect the crew from cave-ins. The shoring system being used by the crew that day consisted of 2x12 or 2x10 oak boards driven into the sides of the trench with approximately 24 inches of space between them, all covered by black "geotechnical material," described as looking similar to black garbage bags. According to Mr. Kelly and Mr. Greig, Carl visited the site at least once, and perhaps twice, after getting Mr. Gautreaux's call, but after inspecting the trench did not approve a trench box and told the crew to get back to work without one.

Plaintiff and his father, Morris Young, who was also working on the same crew, testified in depositions that the trench had experienced other cave-ins that day, though none causing injury, which had prompted Mr. Gautreaux to call Carl. Plaintiff also testified in his deposition that an All South "engineer," whom he did not name, had come over prior to the cave-in that injured plaintiff to inspect the trench and measure the distance between the boards. However, it is unclear who this person actually was.[6] Mr. Greig, who testified in his deposition he was not the project engineer, said that while he did look at the boards in the trench, he did not

---

[5] The cave-ins were also described as "clumps" of dirt falling or sloughing off into the trench. Mr. Greig testified that he saw clumps of dirt filling in the bottom of the trench with some water accumulation.

[6] Mr. Morris Young also briefly referred to an engineer being present at the site, along with other construction personnel that he could not identify. His reference to the engineer's presence was not detailed and he did not describe him as measuring the distance between the boards.

take any measurements. Mr. Greig testified that he was present when the subject cave-in occurred and assisted in the crew's efforts to free Mr. Young.

Mr. Young alleged in his petition for damages that various acts of negligence committed at the jobsite by an unnamed All South "supervisor," such as failing to check the trench after being informed of previous cave-ins, and allowing heavy construction trucks to travel in the immediate area of the trench, created an unreasonable risk of injury to him, breaching various provisions in All South's contract with the School Board, and thus making All South liable for his injuries. In due course, All South moved for summary judgment, contending that the contract between it and the School Board clearly and unequivocally stated that Hard Rock, the contractor and plaintiff's employer, and not All South, had exclusive responsibility for the safety of its crews, as well as exclusive control over the means and methods of the construction work, and that as construction manager and inspector, All South had no contractual responsibility for safety and no contractual authority to interfere in or direct Hard Rock's means and methods to perform the work. The relevant contracts between the School Board and Hard Rock and between the School Board and All South were attached to the pleadings and thus admitted at the hearing on the motion for summary judgment.[7]

Mr. Young opposed the motion for summary judgment, arguing that All South clearly had both the right and a duty under its contract with the School Board for his safety, and breached those duties by failing to stop the work prior to the trench collapse when the evidence showed that its employees observed the dangerous conditions. He attached the affidavit of his expert witness, Neil B. Hall, an architect, to his opposition, who opined that All South, the owner's agent under

---

[7] Contract documents consist of: (1) AIA Document Al0l-2007, Standard Form of Agreement Between Owner and Contractor, between "Owner," St. John the Baptist Parish Public Schools, and "Contractor," Hard Rock Construction, L.L.C.; (2) AIA Document A201-2007, General Conditions for the Contract for Construction; and (3) AIA A201-2007, Contract between "Owner" and "Engineer."

the terms of its contract with the School Board, therefore had the owner's contractual authority to stop the work without cause, and thus could have stopped the work "for cause" after observing the unsafe trench, after which it was "likely" that Hard Rock would have heeded this "good engineering advice" and properly stabilized the trench. All South moved to strike the affidavit, which the trial court partially denied after the hearing in its judgment.[8]

Following a hearing on the summary judgment motion on December 6, 2018, the trial court took the matter under advisement, and on February 19, 2019, rendered judgment in favor of All South. In its written reasons for judgment, the trial court stated:

> Here, the American Institute of Architects contract utilized in determining the roles of the parties and the duties between them used clear and explicit terms. Section 4.2.2 states that the engineer will not have "control over, charge of, or responsibility for ... safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities[.]" *All South Ex. C, §4.2.2 at 21.* It is apparent that the parties intended to hold only one party, Hard Rock Construction, liable for safety precautions. Indeed, the same contract provides that the contractor is "solely responsible" for all instrumentalities of the construction job. *All South Ex. C., §3.3.1 at 14-15.* The contract intends for the engineer to be in charge of determining the date of substantial compliance, preparing change orders, reviewing contractor submissions, and keeping the owner informed on the progress of the work. *All South Ex. C. at 21-22.*

Further, citing *Yocum v. City of Minden*, 26,424 (La. App. 2 Cir. 1/25/95), 649 So.2d 129, in its reasons for judgment, the trial court specifically found that All South had no contractual duty for plaintiff's safety, and dismissed plaintiff's case against All South with prejudice. Plaintiff's timely appeal followed.

On appeal, plaintiff argues that the trial court erred in finding that All South had no duty towards plaintiff for his safety and cited to specific contractual

---

[8] The trial court's ruling on the motion to strike has not been raised as an issue in this appeal.

provisions in All South's contract with the School Board. In brief, plaintiff also cites *Yocum* for the position that All South owed him a "moral duty" for his safety.

**LAW AND ANALYSIS**

"A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). "The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1).

Appellate courts review summary judgments *de novo* using the same criteria applied by trial courts to determine whether summary judgment is appropriate. *Pizani v. Progressive Ins. Co.*, 98-225 (La. App. 5 Cir. 9/16/98), 719 So.2d 1086, 1087. A *de novo* review or an appeal *de novo* is an appeal in which the appellate court uses the trial court's record, but reviews the evidence and law without deference to the trial court's rulings. *Wooley v. Lucksinger*, 06-1140 (La. App. 1 Cir. 12/30/08), 14 So.3d 311, 352; *Sarasino v. State Through Department of Public Safety and Corrections*, 16-408 (La. App. 5 Cir. 3/15/17), 215 So.3d 923, 928. The decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case. *Muller v. Carrier Corp.*, 07-770 (La. App. 5 Cir. 4/15/08), 984 So.2d 883, 885.

In determining the duty owed to an employee of a contractor by an engineering firm also involved in the project, the court must consider the express provisions of the contract between the parties. *Black v. Gorman-Rupp*, 00-1223 (La. App. 4 Cir. 7/11/01), 791 So.2d 793, 796, *writ denied*, 01-2302 (La. 11/21/01), 802 So.2d 635, citing *Yocum v. City of Minden*, 26,424 (La. App. 2 Cir. 1/25/95), 649 So.2d 129, 131-132, which held:

> Duty is a question of law. *Harris v. Pizza Hut*, 455 So.2d 1364 (La. 1984); *Crane v. Exxon Corp.*, U.S.A., 613 So.2d 214 (La. App. 1 Cir. 1992). The particular facts and circumstances of each individual case determine the extent of the duty and the resulting degree of care necessary to fulfill that duty. *Socorro v. City of New Orleans*, 579 So.2d 931 (La. 1991); *Crane v. Exxon Corp., U.S.A., supra*. In determining the duty owed to an employee of a contractor by an engineering firm also involved in the project, the court must consider the express provisions of the contract between the parties. *Day v. National U.S. Radiator Corp.*, 128 So.2d 660, 241 La. 288 (La. 1961).

The interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. For purposes of interpreting a contract, a contract is "ambiguous" when it lacks a provision bearing on the issue, its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions, or the parties' intent cannot be ascertained from the language used. *Plaisance v. Jefferson Par. Sch. Bd.*, 18-16 (La. App. 5 Cir. 7/31/18), 252 So.3d 996, 1003, citing *Lomark, Inc. v. LavigneBaker Petroleum, LLC*, 12-389 (La. App. 5 Cir. 2/21/13), 110 So.3d 1107, 1111. The common intent of the parties to a contract is determined in accordance with the general, ordinary, plain, and popular meaning of the words used in the contract. *Id.* (Internal citations omitted.)

## ASSIGNMENT OF ERROR NUMBER ONE

### *"Contractual duty" for safety to plaintiff*

In his first assignment of error, plaintiff argues that the trial court erred when it failed to consider the express provisions of the contract between the parties in its determination that All South owed no contractual duty for safety to plaintiff, the

employee of the contractor. Plaintiff argues that although the contract does state that the contractor was responsible for safety, as well as had exclusive control over the means and methods of construction, the Contracts, Plans and Specs carved out exceptions to this contractual language, specifically Section 3.3.1, which makes an exception to the language of Section 4.2.2. Plaintiff argues that Section 3.3.1 shifts responsibility for means, methods, techniques, sequences, and procedures to the owner if the contractor places the owner on notice of a safety issue.

All South's contract with the School Board contains the following explicit provisions regarding responsibility for construction means and methods and safety at the work site. First, Section 3.3.1, found under the heading "Supervision and Construction Procedures," provides:

> The Contractor shall supervise and direct the Work using the Contractor's best skill and attention. *The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters.* If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Engineer and shall not proceed with that portion of the Work without further written instructions from the Engineer. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any loss or damage arising solely from those Owner-required means, methods, techniques, sequences or procedures. (Emphasis added.)

Next, in Section 4.2.2, the contract provides, in pertinent part:

> … *The Engineer [All South] will not have control over, charge of, or responsibility for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's [Hard Rock's] rights and responsibilities under the Contract Documents, except as provided in Section 3.3.1.* (Emphasis added.)

Upon review, we find no ambiguity in the part of Section 3.3.1 which states that "If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Engineer and shall not proceed with that portion of the Work without further written instructions from the Engineer." This section, in plain terms, only becomes operable if the *contractor* gives *timely written notice* about a safety concern to the engineer. As the facts and evidence show that this sequence of events did not occur, All South had no responsibilities or duties to any person under this Section.

The other "exceptions" to the contract language plaintiff relies on are as follows. First, plaintiff cites Section 1.1.9, which provides:

> The Owner has retained the services of All South Consulting Engineers, LLC as its Program Manager. The Program Manager is the Owner's Representative and Agent for all matters except for adjustments in the Contract Sum or Contract Time. The Owner designates its Superintendent to act on its behalf involving matters of the Contract Sum or the Contract Time.

Plaintiff argues that this provision makes All South the owner's agent who can act for the owner to exercise all other contractual provisions. Plaintiff next cites Section 14.3.1, which provides:

> The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time was the Owner may determine.

Section 2.3, also cited by plaintiff, provides, in pertinent part:

> If the Contractor fails to correct work that is not in strict accordance with the requirements of the Contract Documents as required by Section 12.2, repeatedly fails to carry out Work in strict accordance with the Contract Documents, or fails or refuses to provide a sufficient amount of properly supervised and coordinated labor, materials, or equipment so as to complete the Work within the Contract time, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, *the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Section 6.1.3.* … (Emphasis added.)

The last sentence of Section 6.1.3 provides:

> Contractor shall do all cutting, fitting and patching of the Work required to make its several parts come together properly in a manner that will not endanger any Work of others by cutting, excavating or otherwise altering their work without the written consent of the Owner.

Finally, Section 2.5 cited by plaintiff provides:

> The Owner has retained a Program Manager. The Engineer retained by the Owner to design the Project has the responsibility to administer the Contract for Construction, including observation of the Work. Contractor stipulates and agrees that the Owner and Program Manager shall have no responsibility for the performance or failure to perform of the Engineer, and Contractor stipulates and agrees that the Contractor shall have no claim or cause of action of any kind whatsoever directly or indirectly against the Owner or Program manager arising out of or in any way connected with the performance or failure to perform of the Engineer.

Plaintiff contends that reading these provisions in conjunction with one another leads to the legal conclusion that the defendant, All South, had a duty to stop the work upon observing a dangerous condition.

As did the trial court, we disagree with plaintiff's position that the sections of the contract he cites override the aforementioned explicit provisions that place the responsibility for means and methods, as well as responsibility for its workers' safety, squarely under the control of Hard Rock. Besides the requirement that the work stop notice must be in writing, a condition that would not have timely served plaintiff in this case, the provision cited by plaintiff, Section 14.3.1, is entitled "Suspension by the Owner for Convenience" and plaintiff has simply not borne his burden of proving that it was intended, as he claims, to give All South full authority to stop the progress of any work they felt was unsafe.

The contractual provisions relied upon by plaintiff do not pertain to safety, but rather pertain to the pace of the work and provide the Owner with remedies in the event the work does not proceed timely, as well as provide specific direction to the Contractor regarding safeguarding the work of "others" on the jobsite. There is no testimony or evidence in the record that these cited provisions pertain to safety

or have been construed by other courts to allow an engineer the authority to intervene for safety when other explicit contractual provisions gave exclusive control over worker safety, as well as means and methods, to the contractor (here, Hard Rock). There is no testimony or evidence in the record indicating that the work was not proceeding in accordance with the contract documents.[9] Accordingly, upon *de novo* review, we find that no genuine issues of material fact exist as to All South's non-liability to plaintiff under the explicit provisions of All South's contract with the School Board, and that All South is entitled to judgment as a matter of law. This assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER TWO

### *"Moral duty" to plaintiff*

Plaintiff also asserts in brief that All South owed him a "moral duty," *i.e.*, a duty not arising out of the contract provisions, to stop the work if it observed a dangerous working condition. He argues that deposition testimony shows that All South was aware of the dangerous condition of the trench. He contends that the trial court erred in failing to consider the issue of the moral duty, as per *Yocum*.

Upon review, we disagree with plaintiff that the trial court should have considered the issue of whether a "moral duty" was owed to plaintiff by All South. Both plaintiff's petition and his opposition to the motion for summary judgment argue that All South breached contractual duties to him for his safety, a position that the trial court rejected and we have affirmed. While plaintiff did briefly mention, in his opposition to the motion for summary judgment, *Yocum*'s discussion of whether the engineer owed Mr. Yocum a "moral duty" for his safety, plaintiff's opposition neither argued nor established that Louisiana law recognizes

---

[9] There was no testimony that the contract specifications were not being followed. While Mr. Greig testified that he expected the work to be further along than he found, he also noted that it was either the first or second day on the job, and that work crews typically find their "rhythm" and perform more efficiently as work progresses. It does not appear that Mr. Greig took any measures with Hard Rock to address the pace of the work prior to plaintiff's accident.

such a duty in a construction case when the parties' contracts explicitly state otherwise.

However, because plaintiff raises this issue in his appellate brief, this Court will analyze *Yocum* and address the merits of this issue. The *Yocum* case arose out of a construction site accident where Mr. Yocum, an employee of the contractor, was injured in an excavation ditch. Mr. Yocum filed suit against the engineering firm, Owen & White, who was engaged by the owner to provide engineering services and construction oversight, similar to the case at bar. *Yocum*, 649 So.2d at 130. Mr. Yocum alleged that Owen & White was liable to plaintiff because it "failed to correct or report the unsafe slope of the ditch," and that its employee was negligent for "failing to observe, warn of, report, or correct an unsafe condition." *Id.* After a bench trial, the trial court held that Owen & White owed no contractual duty to warn of the conditions of the ditch and that there was no connection between Mr. Yocum's injury and the work performed by Owen & White. *Id.* at 131. The court of appeal scrutinized the contract documents, finding that the contract clearly defined and limited Mr. Hardin's (Owen & White's engineer) duties, and that Mr. Hardin had limited authority and was expressly prohibited from guiding the contractor or its employees in its methods. The court therefore concluded that Mr. Hardin did not breach any legal duty bestowed upon him via the contract. *Id.* at 132.

The court next briefly considered, however, whether Owen & White owed any "moral duty" to Mr. Yocum by not warning of the dangerous condition posed by the slope of the ditch at the time of the accident. *Yocum*, 649 So.2d at 132. The court noted that both parties' expert witnesses testified that Mr. Hardin would have had a "moral duty to warn" the contractor if he knew a condition to be

unreasonably dangerous.[10]  *Id.* at 133.  Without analyzing any law, jurisprudence, or policy factors regarding whether such an extra-contractual tort duty first existed or should exist, the court reasoned that such a duty could not have been breached if Mr. Hardin did not know about the dangerous condition.  *Id.*  Based on Mr. Hardin's testimony and review of the record as a whole, the court of appeal concluded that the trial court did not err in determining that Mr. Hardin did not know the ditch was unsafe and therefore could not be held to a moral duty to warn. *Id.*

Upon review, we find that *Yocum*'s brief discussion about the possibility of a moral or tort duty to Mr. Yocum was merely *dicta* and was likely the *Yocum* court's attempt to be thorough by addressing an argument apparently made by the parties.  Tellingly, a thorough search of Louisiana jurisprudence fails to uncover any Louisiana court citing *Yocum* as creating or recognizing a moral or tort duty to a contractor's employee on behalf of an engineering firm contrary to the established body of case law holding that specific contractual provisions govern the duties and responsibilities of the parties.[11]  Furthermore, we find no other line of cases supporting this theory of recovery.  Such *dicta* does not jurisprudentially

---

[10] While the court used the term "moral" to describe this other alleged duty, it appears that the court meant an enforceable "legal" duty, such as a tort duty, one *not* contractual in nature, and not a "moral duty" or "moral obligation" as it is described elsewhere in Louisiana law and jurisprudence.  See, for instance, the discussion of moral duty and natural obligations found in La. C.C. art. 1760, *et seq.*, in *Azaretta v. Manalla*, 00-227 (La. App. 5 Cir. 7/25/00), 768 So.2d 179.  Also, see for example *Irwin v. Hunnewell*, 207 La. 422, 433, 21 So.2d 485, 488 (1945).  The legal tenets and reasoning in these lines of cases have no application to the case at bar and are merely cited here to clarify the type of duty evidently described in *Yocum*.

[11] Besides the *Black* case, *Yocum* was cited by a Louisiana court in *Simmons Marine, LLC v. Enervest Operating, LLC*, 05-1303, 2005 WL 2050283 (E.D. La. Aug. 3, 2005) to determine that oyster dredgers, who were unrelated legally to a natural gas pipeline, were owed no duty, contractual or otherwise, by an engineering firm engaged by the builder of a natural gas pipeline.  *Simmons* is factually and legally distinguishable to the instant case.

See also *Johnson v. R.R. Controls, L.P.*, 2015 WL 566800 (W.D. La. Feb. 10, 2015), following *Yocum* for the position that the parties' responsibilities are regulated by contract, as well as *Taylor v. Voigtlander*, 36,670 (La. App. 2 Cir. 12/11/02), 833 So.2d 1204, 1206 and *Brewer v. J.B. Hunt Transp., Inc.*, 08-1666 (La. App. 1 Cir. 3/18/09), 9 So.3d 932, 945, *aff'd in part, rev'd in part* on different grounds, 09-1408 (La. 3/16/10), 35 So.3d 230, which both cited *Yocum* for the general principle that duty is a question of law.

See also *Star Enter. v. Am. Mfrs. Mut. Ins. Co.*, 03-189 (La. App. 5 Cir. 5/28/03), 847 So.2d 717, 720, *writ denied sub nom. Star Enter. v. Am. Manufactures Mut. Ins. Co.*, 03-2218 (La. 11/14/03), 858 So.2d 435, where in this Court cited *Yocum* for a different legal issue that is not relevant in this case.

create a duty to a contractor's employee from an engineer/architect for safety that operates independently of explicit contractual provisions. The *Yocum* court's short disposition of the parties' arguments, lacking any analysis of law or policy, does not supplant the established body of law holding that contractual provisions govern the relationship and duties of the parties thereto. As in the case at bar, the contractual provisions in *Yocum* gave the responsibility for safety, as well as means and methods of construction, to the contractor and gave no responsibility or control over those issues to the engineer.

Also in the instant case, unlike in *Yocum*, each side did not testify that a moral duty exists from the engineer to the contractor's worker. Plaintiff's expert Neil B. Hall did not opine that All South had a moral or tort duty to plaintiff, but rather confined his analysis to the terms of the contract. Only defendant's project manager, Scott Greig, who was a fact witness, testified that if he "saw something that was imminently a threat to life, limb, or eyesight, absolutely, we have a moral obligation to stop it."[12] He testified that he did not observe any condition that he believe reached that threshold. Gerard Kelly, who testified that he told Mr. Greig he did not believe that the shoring system Hard Rock was using in the trench was "kosher," nonetheless also said that in his experience, he had no right to tell the contractor anything regarding safety, and he did not expect Mr. Greig to act on Mr. Kelly's opinion about the trench.[13] He acknowledged that he did not know the specific provisions of the contracts, nor did he know the status of the law on this issue.

---

[12] Mr. Greig testified in his deposition as follows: "The specifications in this job were very specific that the trench safety was exclusively to the contractor. The design, how they implemented it, their means and methods, if you will. But certainly, with my background, any time I saw and I would tell my inspector that we saw something that was imminently a threat to life, limb, or eyesight, absolutely, we have a moral obligation to stop it."

[13] Plaintiff notes, however, that Mr. Kelly testified that in another unspecified job, he once told a worker to get out of a trench because the worker was alone in the trench and without a hard hat, because he believed that worker to be in a highly dangerous position. Mr. Kelly's testimony about this prior unrelated incident does not somehow indicate that he assumed an extra contractual duty to plaintiff in this case.

Plaintiff also argued to this Court that All South assumed a duty to plaintiff when its "engineer" measured the boards in the trench and gave his approval. At the very least, plaintiff argues that his testimony that a person he believed was an All South engineer measured the boards and approved the trench creates a genuine material issue of fact as to whether All South assumed a duty towards him, precluding summary judgment. We disagree.

An assumption of duty arises when the defendant (1) undertakes to render services, (2) to another, (3) which the defendant should recognize as necessary for the protection of a third person. *Hebert v. Rapides Par. Police Jury*, 06-2001 (La. 4/11/07), 974 So.2d 635, 643, *on reh'g* (Jan. 16, 2008), quoting *Bujol v. Entergy Services, Inc.*, 03-0492 (La. 5/25/04), 922 So.2d 1113, 1129. The *Hebert* Court continued:

> The *Bujol* court described the action required by the defendant in such instances as an affirmative undertaking and further explained that the determination of whether such an action was taken involves an examination of the scope of the defendant's involvement, the extent of the defendant's authority, and the underlying intent of the defendant. 03-0492 at p. 18, 922 So.2d at 1131. As in other civil cases, the burden is on the plaintiff to prove by a preponderance of the evidence facts sufficient to establish the action undertaken by the defendant. *See e.g.*, *Bujol*, 03-0492 at p. 16, 922 So.2d at 1130.
>
> However, neither a defendant's concern with safety conditions and its general communications regarding safety matters, nor its superior knowledge and expertise regarding safety issues, will create a duty to guarantee safety. *Bujol*, 03-0492 at p. 21, 922 So.2d at 1133. Likewise, inspections and mere safety recommendations, which recommendations are not mandatory and are not within the authority of the defendant to remediate, cannot create such a duty. *Id.* at 20-22, 1133-34.

*Hebert*, 974 So.2d at 644.

Bearing this threshold in mind, we find that plaintiff's deposition testimony regarding the identity of the "engineer" falls critically short of meeting his

19-CA-484           15

statutory burden of proof in opposing All South's motion for summary judgment.[14] The depositions of plaintiff, his father, Mr. Greig, and Mr. Kelly establish that many personnel from various construction-related companies were onsite on the day of the accident. Taken as a whole, plaintiff offered insufficient evidence that this person was first, an engineer, or who was, second, employed by All South. Without any other facts tending to establish this person's identity, plaintiff fails to show the existence of a genuine issue of material fact showing that All South assumed any duty towards plaintiff. Accordingly, this assignment of error is without merit.

## CONCLUSION

Upon *de novo* review, for the foregoing reasons, we find that no genuine issues of material fact exist and that All State Consulting Engineers, LLC is entitled to judgment as a matter of law. Accordingly, we affirm the trial court's grant of summary judgment in favor of All South Consulting Engineers, LLC, dismissing plaintiff's suit against it with prejudice.

## AFFIRMED

---

[14] As stated above, "The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1).

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**MARCH 17, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 19-CA-484

### E-NOTIFIED
40TH DISTRICT COURT (CLERK)
HONORABLE J. STERLING SNOWDY (DISTRICT JUDGE)
HARRY E. FORST (APPELLANT)          DAVID K. PERSONS (APPELLEE)

### MAILED
ANGELICA P. DUBINSKY (ATTORNEY)
ONE GALLERIA BOULEVARD
SUITE 1400
METAIRIE, LA 70001