968 So.2d 806 (2007)
SEQUOIA VENTURE NO. 2, LTD., Plaintiff-Appellant
v.
Sonia Peters CASSIDY and Joe Roy Peters, Defendants-Appellees.
No. 42,426-CA.
Court of Appeal of Louisiana, Second Circuit.
October 10, 2007.
*807 McMichael, Medlin, D'Anna & Wedgeworth, by James C. McMichael, Jr., Shreveport, for Appellant.
Jefferson R. Thompson, for Appellees.
Before STEWART, DREW and LOLLEY, JJ.
STEWART, J.
The plaintiff, Sequoia Venture No. 2, Ltd. ("Sequoia") appeals a summary judgment that denied its claim for specific performance of a buy/sell agreement and granted the claim of the defendants, Sonia Peters Cassidy and Joe Roy Peters, for termination of the agreement. For the following reasons, we reverse the trial court's judgment and order specific performance as explained in this opinion.

FACTS
The parties entered a buy/sell agreement on October 3, 2005. Sequoia agreed to purchase three tracts of land from the defendants, who are siblings. The land was the last of the tracts needed for a mixed use commercial and residential development planned by Sequoia for Bossier City between Barksdale Boulevard and Arthur Ray Teague Parkway near the CenturyTel Center.
The agreed upon purchase price was $750,000. Sequoia paid a deposit of $7,500, which was held in escrow to be applied to the purchase price at closing. The agreement provided that half of the purchase price was due at closing, which was to occur no later than December 30, 2005, if not extended. The agreement further stated that the balance was payable "no later than April 10, 2006."
The agreement gave the seller a 60-day inspection period during which the seller had the option of obtaining a commitment for title insurance. Upon discovery of any title objection during the inspection period, *808 the agreement provided the seller with 20 days after receiving notice to cure or attempt to cure the objection. Four options were available to the purchaser if the seller failed to cure the objection: (1) cure the objection at the purchaser's cost and deduct the cost from the purchase price at closing; (2) extend the seller's period for curing the objection; (3) waive the objection and proceed to closing; or (4) terminate the agreement and get back the deposit. In the event of extensions for the purpose of curing a title defect, the closing would occur 30 days thereafter.
The agreement included certain representations by the sellers. They represented that there were "no purchase contracts, options or other agreements of any kind, written or oral, whereby any person or entity . . . has acquired or has any basis to assert any right, title or interest in, or right to possession, use, enjoyment or proceeds of all or any portion of the Property." However, the sellers disclosed the existence of an "existing month-to-month lease" and represented that it would not be modified prior to closing. The agreement also required the seller, at closing, to deliver a free and clear title along with any affidavits or documents required for obtaining title insurance and "such additional documents as might be reasonably requested by Purchaser or the title company to consummate the sale. . . ."
At the close of the contractual inspection period, Sequoia notified the sellers that it did not consider itself bound by the unrecorded lease or the previously undisclosed right of first refusal included in it. Closing was set for December 29, 2005, at United Title. The closing documents were signed on behalf of the purchaser, but the sellers refused to sign. It appears there were issues about an affidavit concerning the title that the sellers were required to sign as part of the closing documents.
After the closing failed, the purchaser received an anonymous fax showing that the lease had been recorded on December 28, 2005, the day before the closing was to have occurred. The fax also included a handwritten letter purporting to be a renewal of the lease for five years as of February 26, 2004. Sequoia determined that the recordation of the lease and the purported renewal now constituted a title objection. The parties agreed to extend the closing date so that sellers could cure the objection. On April 5, 2006, the sellers' lease termination agreement was filed and recorded in Bossier Parish. The lease termination was signed by the lessee, Christine Keck, on March 30, 2006, and by Sonia Cassidy on behalf of the sellers on April 5, 2006. However, the termination agreement that was finally signed three months after the closing was to have occurred was not notarized, Cassidy's signature was not witnessed, and she did not have a power of attorney authorizing her to sign on behalf of her brother.
During April, the parties began to negotiate a new closing date, but more issues arose. The sellers raised the issue of how the purchase price was to be paid. They contended that the full price should be paid at closing due to the contract provision requiring the balance of the purchase price to be paid "no later than April 10, 2006." Sequoia contended that the contract provided for a bifurcated payment and that the extension to cure the title defect extended the payment periods under the contract. There were also issues about the fees to be charged against the sellers for the curative work on the title issue. Additionally, Sequoia was unsatisfied with the recorded lease termination agreement that was not notarized and not self-proving as required for it to obtain a title insurance policy. Either United Title or an attorney for Sequoia prepared a *809 second lease termination agreement. The lessee's notarized signature was obtained on April 27, 2006. Sellers have not yet signed the termination.
Attempts made during April and May to complete the closing were unsuccessful. Disagreements over the payment schedule, payment of fees for curative work, and the lease termination agreement led to an impasse which Sequoia finally sought to break by filing suit for specific performance. Sequoia alleged that the sellers did not exercise good faith and reasonable efforts to cure the title objection and that they refused to close under the terms of the agreement. The sellers filed a reconventional demand for termination of the agreement and liquidated damages in the amount of the $7,500 deposit paid by Sequoia. Sellers denied that the lease was a title objection and alleged that Sequoia breached the agreement by attempting to assess unwarranted closing costs and by refusing to pay the full purchase price upon scheduling a closing after April 10, 2006.
At a pre-trial conference, the trial court determined that the material facts were not in dispute and that the matter was one that could be decided on cross-motions for summary judgment. The parties did not object. Instead, they filed motions for summary judgment. The primary issues in dispute were the payment schedule and the lease termination. In granting the sellers' motion for summary judgment, the trial court determined that the contract language clearly provided for final payment on April 10, 2006, so any closing after that date would require full performance by both parties. The court also determined that the title objection was cured. Judgment was rendered November 9, 2006, terminating the buy/sell agreement and awarding the sellers liquidated damages. Sequoia's suspensive appeal followed.

DISCUSSION
Rulings on motions for summary judgment are subject to a de novo review on appeal. Suire v. Lafayette City-Parish Consol. Gov., XXXX-XXXX (La.4/12/05), 907 So.2d 37. When the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show there is no genuine issue of material fact, summary judgment should be granted. La. C.C.P. art. 966(B).
When a contract can be construed from the four corners of the instrument, interpretation of the contract presents a question of law that can be decided on summary judgment. Sims v. Mulhearn Funeral Home, Inc., XXXX-XXXX (La.5/22/07), 956 So.2d 583; Scott v. Red River Waterway Commission, 41,009 (La. App. 2d Cir.4/12/06), 926 So.2d 830, writ denied, XXXX-XXXX (La.9/15/06), 936 So.2d 1269.
La. C.C. arts. 2045-2057 govern the interpretation of contracts. Contracts are interpreted according to the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear, explicit, and lead to no absurd consequences, no further interpretation need be made in search of the parties' intent. La. C.C. art. 2046. A contract is ambiguous when it lacks a provision bearing on the issue, its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions, or the parties' intent cannot be ascertained from the language used. Campbell v. Melton, 2001-2578 (La.5/14/02) 817 So.2d 69. A provision is not considered ambiguous merely because one party creates a dispute about it. Campbell, supra; Slocum-Stevens Ins. Agency, Inc. v. International Risk Consultants, Inc., 27,353 (La.App. 2d *810 Cir.12/11/95), 666 So.2d 352, writ denied, 96-0102 (La.3/8/96), 669 So.2d 399.
There are two issues in dispute-the payment and the lease termination. The undisputed facts show that both parties failed to fulfill the obligations of the contract. The clear and unambiguous contract language provides for the balance of the purchase price to be paid "no later than April 10, 2006." Though the contract provided for extensions of the closing date, no provision was included for extending the April 10, 2006, deadline for payment of the final balance. Sequoia's refusal to pay the full purchase price at closing in April or thereafter is a breach of the agreement.
The clear and unambiguous language of the buy/sell agreement also sets forth obligations applicable to the seller that have not been fulfilled. Contrary to the sellers' representation in the agreement of the existence of a month-to-month lease that would not be modified prior to closing, the lease included an undisclosed right of first refusal. Moreover, the lease was modified, contrary to the sellers' representation, by the recordation of the lease on the day prior to the first scheduled closing. The recordation of the lease on the eve of the closing scheduled for December 29, 2005, along with the revelation of a letter purporting to be a five-year renewal of the lease, resulted in the lease becoming a title impediment for the buyer. Though claiming to have had no knowledge that the lease had been recorded the day before, the sellers refused to close on the sale. These actions and the sellers' refusal to close on the scheduled date resulted in the delays that have culminated in the disputes being litigated.
Section 3.2 of the buy/sell agreement obligates the sellers to "use good faith and reasonable efforts" to cure any title objection. Moreover, Section 6.1 of the agreement obligates the sellers to provide at closing "any affidavits or other documents required by the title insurance company as a prerequisite of issuing the title policy" and "such additional documents as might be reasonably requested by Purchaser or the title company to consummate the sale of the property." The undisputed facts in the record show that the sellers have not resolved the title objection to the satisfaction of the title company or the purchaser. The unwitnessed and un-notarized termination agreement filed by the seller did not suffice for the purchaser to clear the objection for title insurance purposes. The purchaser's closing agent has prepared an appropriate termination and has had it signed by the lessee. It is awaiting the sellers' signatures.
At oral arguments, the attorneys for the parties were questioned about what needed to be done to complete the sale. Sequoia's attorney represented to the court that it was willing to make one full payment to close the sale as long as the appropriate documents were signed to allow it to cure the objection and obtain title insurance. The sellers' attorney represented that if all of the purchase price is paid at closing, then the sellers are willing to sign at closing whatever documents are necessary to satisfy the purchaser on the title issue.
We are authorized to render any judgment that is just, legal and proper upon the record on appeal. La. C.C.P. art. 2164. Hibernia National Bank v. Orleans Regional Hosp., L.L.C., 28,982 (La.App. 2d Cir.11/1/96), 682 So.2d 1291, writ denied, 97-0026 (La.2/21/97), 688 So.2d 513. Considering the record before us and the representations of counsel, we find no basis for a summary judgment terminating the buy/sell agreement. Rather, specific performance is ordered according to the terms of the agreement and as represented by the parties' attorneys. The purchaser, Sequoia, is to pay the balance due on *811 the full purchase price of $750,000 at closing. The sellers, Sonia Peters Cassidy and Joe Peters, are to sign the termination agreement supplied on behalf of Sequoia and required for it to clear the title objection for title insurance purposes. We note that the sellers are obligated to pay "all costs associated with title curative work, if any" as set forth in Section 6.4 of the agreement. Sellers are to be assessed only those curative costs of preparing, signing, and notarizing the termination agreement as indicated by an itemized statement. Other closing costs of the sale are to be assessed as provided in the buy/sell agreement.

CONCLUSION
For the reasons explained, the trial court's judgment terminating the buy/sell agreement and awarding stipulated damages to Sonia Peters Cassidy and Joe Peters is reversed. Judgment is rendered granting specific performance as set forth in this opinion. Costs of this appeal are assessed equally between the parties.
REVERSED and RENDERED.