Judgment rendered November 16, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,788-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SPRINGBOK ROYALTY                        Plaintiff-Appellee
PARTNERS, LLC

versus

RALPH AND SHERYL COOK                    Defendants-Appellants

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 81,935

Honorable Amy Burford McCartney, Judge

* * * * *

DYESS LAW FIRM                           Counsel for Appellants
By: William D. Dyess

AYRES, SHELTON, WILLIAMS,
BENSON & PAINE, LLC
By: Curtis R. Shelton

THOMAS, SOILEAU, JACKSON                 Counsel for Appellee
& COLE, LLP
By: Steven E. Soileau
    Erica M. Ducoing

* * * * *

Before PITMAN, COX, and THOMPSON, JJ.

**THOMPSON, J.**

A mineral royalty company sought to enforce against the property owners its letter agreement to purchase their mineral interest in four tracts of land in DeSoto Parish, Louisiana. The property owners refused to conclude the sale when they reportedly received a more lucrative offer for their mineral interests. The trial court granted the mineral royalty company's motion for summary judgment, noting the absence of any ambiguity in the contract because an employee of the royalty company met with landowners at their home to discuss the letter agreement that the company prepared, which clearly laid out the terms of the agreement between the parties, including that the landowners would be selling all of their net mineral interest in the four tracts of land. The landowners contend they signed the agreement, but they later argued that they had not read the agreement prior to signing it and that it did not accurately reflect the amount of their interest they intended to sell. For the reasons set forth in greater detail below, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, Springbok Royalty Partners, LLC ("Springbok"), is an energy company located in Texas, which among other endeavors, purchases mineral interests from property owners in Louisiana. Defendants, Ralph and Sheryl Cook (the "Cooks"), are residents of Sabine Parish, Louisiana, who own land and some corresponding mineral interests in multiple parishes, including four tracts of land in DeSoto Parish, Louisiana (the "subject property"). In 2018, the Cooks sold one-half of their interest in 222 net mineral acres in the subject property to an unrelated party, retaining

ownership of one-half of the minerals, as 111.1277 net mineral acres in the 222 actual acres.

In November 2020, Springbok contacted Mr. Cook about acquiring the Cooks' remaining 111.1277 net mineral acres. The parties discussed the acquisition and made an agreement as to the price. To reduce that agreement to the necessary writing, an employee of Springbok, Mike Heldoorn ("Heldoorn"), went to the Cooks' home with an already prepared letter agreement on December 3, 2020. The letter agreement is labeled as an offer to purchase mineral interests in lands (hereinafter, the "Letter Agreement"). The Letter Agreement provides that Springbok will submit a cash offer of $575,000 in consideration for a mineral deed to be effective December 1, 2020, for "all of the right, title, interest, and estate held and/or owned by Ralph Cook or Sheryl Cook in and to 111.1277 net mineral acres of the minerals underlying the lands." The Letter Agreement includes the following language:

> This letter shall form a binding agreement and you shall be deemed to have received good, valuable and sufficient consideration for your execution and delivery of your counterpart of this letter in your performance of your obligations hereunder (and you shall not take a position to the contrary).

The Letter Agreement states that Springbok will provide a pre-closing notice of closing, at which time the Cooks will deliver the signed mineral deed and Springbok will pay the purchase price. The Letter Agreement also includes the following language:

> Subject to, and in accordance with, this letter (this "Letter"), Springbok Royalty Partners, LLC, a Delaware limited liability company ("Offerer"), hereby submits an initial cash offer of Five Hundred Seventy Five Thousand Dollars ($575,000.00) (the "Purchase Price") in consideration for a Mineral Deed (as

2

defined below) dated effective as of 12/01/2020 (the "Effective Date") for all of the right title, interest and estate held and/or owned by Ralph Cook and Cheryl Cook ("Seller" or "you") in and to 111.1277 net mineral acres of the minerals (the "Minerals") underlying the Lands, including all royalties on production, executive rights to lease, and any and all other rights, permits or privileges relating to the ownership of the Minerals.

1. Description of Offer. The offer set forth in this Letter (this "Offer") is (a) based upon your fee simple ownership, free and clear of all mortgages, liens and encumbrances, of one hundred percent, (100%) of the leased net mineral acres constituting the Minerals stated for each tract noted on Exhibit A at the Purchase Price (subject to reduction if and to the extent provided below) and (b) subject to Offerer have [sic] a reasonable time to examine, determine and confirm your title to the Minerals and certain other matters with respect to the Minerals and/or the transactions contemplated by this Letter (collectively, the "Transactions"), with each being acceptable to Offerer (in its discretion) prior to the Closing (as defined below). Without limitation of the foregoing, this Offer assumes that (i) your title in and to the Minerals is free and clear of any mortgages, liens or other encumbrances and (ii) the Minerals are subject to an oil, gas and/or mineral lease with a royalty burden of no less than 20%. If the Closing occurs, the Purchase Price shall be proportionately reduced (e.g. on a percentage decrease basis) if Offerer determines (in its discretion) any of the following: (x) you own fewer net mineral acres in and to the Minerals than is set forth above or otherwise stated on Exhibit A, (y) the royalty burden in and to any lease burdening or applicable to any of the Minerals is less than stated above, and/or (z) your net revenue interest in and to any applicable production from or attributable to the Minerals (or the proceeds thereof) is burdened or otherwise reduced, including, without limitation, as a result of a non-participating royalty interest or any other similar interest.

Heldoorn had a lengthy meeting with Mr. Cook, while Mrs. Cook was present, during which he went over the Letter Agreement in detail, and they then signed the agreement. The Cooks later testified that they did not read the Letter Agreement prior to signing it. A few days later, Springbok alleges that Mr. Cook called its office and informed the company that he had received a higher offer for his mineral interests and would not close or sign

3

the mineral deed. The Cooks argue that they thought that they were conveying only one-half of their mineral interest in the subject property. Springbok sent a closing notice to the Cooks with a mineral deed, pursuant to the Letter Agreement, and Mr. Cook contacted Springbok and stated that he was not going to sign the mineral deed.

Springbok then filed suit for specific performance of the Letter Agreement and later filed a motion for summary judgment based on the rather straightforward facts of the Letter Agreement. After a hearing on June 3, 2021, the court denied the motion for summary judgment because the Letter Agreement was not properly attached or referenced as an exhibit, and the court did not consider it. Springbok filed a second motion for summary judgment, properly attaching the Letter Agreement. In the time period between summary judgment motions, Mr. Cook gave a deposition in which he testified that the Letter Agreement was clear as to its terms but that he had not read the agreement prior to signing it. He testified that he contacted Springbok as soon as he realized that the Letter Agreement conveyed all of their mineral interest in the subject property.

The trial court granted the second motion for summary judgment, noting that Mr. Cook was a sophisticated party who, allegedly, believed he was selling only one-half of his mineral interest because he did not read the Letter Agreement prior to signing it. The court issued a judgment on November 15, 2021, directing specific performance of the contract and an accounting to provide information about any royalties received from the effective date of the contract, which would otherwise belong to Springbok and would reduce the sales price to be paid. The Cooks filed a motion for

4

new trial limited to oral argument, which was denied by the trial court. This appeal by the Cooks followed.

## DISCUSSION

The Cooks assert two assignments of error on the part of the trial court, as discussed below.

**First Assignment of Error: The trial judge erred in granting Springbok's second motion for summary judgment when genuine issues of material fact remained as to whether the Letter Agreement reflected the mutual agreement of the parties, was ambiguous, or was obtained through error or fraud.**

In their first assignment of error, the Cooks allege that the trial court erred in granting Springbok's motion for summary judgment because there are multiple issues of material fact that preclude summary judgment. We disagree. The Cooks argue that there are issues of fact regarding whether they agreed to sell the entirety of their mineral interest in the subject property, whether the Letter Agreement is clear and unambiguous, and, finally, whether there was error and misrepresentation by Heldoorn.

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Culberson v. Wells Fargo USA Holdings Inc.*, 54,545 (La. App. 2 Cir. 342 So. 3d 451, writ denied, 22-01159 (La. 11/1/22), __ So. 3d __, 2022 WL 16570141. A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Schultz v. Guoth*, 10-0343 (La. 1/19/11), 57 So. 3d 1002. The procedure is

5

favored and shall be construed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2).

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Maggio v. Parker*, 17-1112 (La. 6/27/18), 250 So. 3d 874; *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876, *cert. denied*, 574 U.S. 869, 135 S. Ct. 197, 190 L. Ed. 2d 130 (2014); *Culberson*, *supra*. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Culberson*, *supra*.

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

6

La. C.C.P. art. 966(D)(1). Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A). When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B). When a contract can be construed from the four corners of the instrument, interpretation of the contract presents a question of law that can be decided on summary judgment. *Sequoia Venture No. 2, Ltd. v. Cassidy*, 42,426 (La. App. 2 Cir. 10/10/07), 968 So. 2d 806, *writ denied*, 07-2210 (La. 1/11/08), 972 So. 2d 1166.

The Cooks argue that they never intended to sell the entirety of their 111.1277 net mineral acres in the subject property and support this contention with their affidavits. Under Louisiana law, contracts are interpreted according to the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear, explicit, and lead to no absurd consequences, no further interpretation need be made in search of the parties' intent. La. C.C. art. 2046.

Here, a review of the record reveals that the terms of the Letter Agreement are clear, explicit, and lead to no absurd consequences. The Letter Agreement unambiguously states that the Cooks are conveying all of their mineral interest, being 111.1277 net mineral acres. The words "half"

7

or "half of half" do not appear in the contract. The intent of the parties regarding the amount of minerals to be sold is clear from the plain language of the Letter Agreement. Mr. Cook acknowledged in his deposition that when he read the contract, which he alleges occurred two days after signing it, it was clear that he and Mrs. Cook had sold the entirety of their interest in the subject property. As such, this court need not look further to determine the parties' intent.

Next, the Cooks contend that portions of the Letter Agreement are ambiguous, particularly Paragraph 9, which states "in the event that you choose to execute this letter and subsequently deliver the mineral deed pursuant to and in accordance with this letter, you will sell all of your right, title, interest and estate in and to the mineral interests in the property(ies) described in the mineral deed." They also direct the court to the definition of "Transactions" located in Paragraph 1 of the Letter Agreement, which states that transactions will include "certain other matters with respect to the Minerals and/or the transactions contemplated by this Letter." The Cooks argue that this language indicates that they were not obligated to sell the minerals until they delivered the mineral deed, even though they signed the letter agreement and that "certain other matters" suggests that the amount of minerals to be sold was undefined. Again, we disagree.

A contract is ambiguous when it lacks a provision bearing on the issue, its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions, or the parties' intent cannot be ascertained from the language used. *Campbell v. Melton*, 01-2578 (La. 5/14/02), 817 So. 2d 69; *Sequoia Venture*, *supra*. A provision is not considered

ambiguous merely because one party creates a dispute about it. *Campbell, supra*. Here, Paragraph 9 must be interpreted in light of the other provisions in the contract so that each is given the meaning suggested by the contract as a whole. We find the Letter Agreement, as a whole, to be clear and unambiguous as to its terms and obligations. For example, Paragraph 6 of the Letter Agreement states:

> You and Offerer expressly acknowledge and agree that (a) you have read and understand the contents of this Letter and are able to freely determine whether it is advisable to accept the Offer and consummate the Transactions, and (b) neither this Letter nor the Mineral Deed shall be construed against you or Offerer by reason of the authorship of any provision. In connection with this Letter and the Offer, you and Offerer will execute and deliver (and, if applicable, cause to be acknowledged) any additional documents and instruments and perform any additional acts that may be necessary or appropriate to fulfill the purposes of this Letter and to give effect to the Transactions. This Letter, and the documents to be delivered pursuant hereto, constitute the entire agreement between you and Offerer pertaining to the subject matter hereof and supersede all prior agreements, understandings, or discussions.

When reading these two provisions together, it is clear that if the Cooks signed the Letter Agreement, they would then be obligated to execute and deliver a mineral deed covering all of their interest in the subject property. Similarly, when the contract is read as a whole, the definition of transactions cannot be interpreted to mean that the Cooks were conveying anything other than all of their mineral interest in the subject property. These arguments are without merit.

The Cooks also argue that even if the Letter Agreement is unambiguous, they made a unilateral error that should vitiate the contract. They claim that they made an error regarding the minerals conveyed because they did not read the Letter Agreement prior to signing it. A contract is

9

formed by the consent of the parties. La. C.C. art. 1927. However, consent may be vitiated by error, fraud, or duress. La. C.C. art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have incurred and that cause was known or should have been known to the other party. La. C.C. art. 1949; *Peironnet*, *supra*. Unilateral error will not vitiate consent to a contract if the error was inexcusable. *Id.* The Louisiana Supreme Court stated in *Peironnet*, *supra*:

> It seems quite clear that, unless induced to do so by outright fraud, a party who signs an instrument without reading it thereby fails to exercise elementary prudence that, if observed, would have prevented him from making his alleged error. As such contract-making conduct cannot be excused, so the resulting error cannot be excused either.

The Cooks' assertion of unilateral error on the amount of minerals to be sold is not supported by the record. The Letter Agreement is clear that the Cooks are to convey all of their mineral interest in the subject property, and they have not provided evidence, other than their self-serving affidavits, to support their assertion that the Letter Agreement would only include one-half of their mineral interest. Evidence in the record indicates that Heldoorn met with the Cooks for a significant amount of time and reviewed the entirety of the Letter Agreement with them. The trial court noted that the Cooks are sophisticated landowners who have previously executed leases and engaged in other complicated property transactions.

Moreover, a party who signs a written document is presumed to know its contents and cannot escape its obligations by claiming that the other party did not explain it or that he failed to read or understand it. *Aguillard v. Auction Mgmt. Corp.*, 04-2804 (La. 6/29/05), 908 So. 2d 1; *Hanlon v. Monsanto Ag Products, LLC*, 48,010 (La. App. 2 Cir. 10/9/13), 124 So. 3d

535. As this court has held before, signatures are not mere ornaments. *Tweedel v. Brasseaux*, 433 So. 2d 133 (La. 1983); *JPS Equip. LLC. v. Cooper*, 50,506 (La. App. 2 Cir. 2/24/16), 188 So. 3d 1106. Even if one assumes that the Cooks were confused about the amount of minerals they were conveying, any potential error on their behalf could have resolved itself if they had simply read the contract before signing it, as the law requires. Considering this, we find there was no unilateral error sufficient to vitiate the contract.

Finally, the Cooks argue that their consent to the contract was vitiated by error or fraud. In support of this argument, they refer the court to their affidavits, arguing that Heldoorn knew or should have known that their intent was to only convey one-half of their mineral interest in the subject property. This court has held that fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. *Henderson v. Windrush Operating Co., LLC*, 47,659 (La. App. 2 Cir. 8/21/13), 128 So. 3d 283, *writ denied*, 13-2502 (La. 2/14/14), 132 So. 3d 411. There is no evidence of fraud in the record, and moreover, any potential confusion by the Cooks regarding the minerals to be sold in the Letter Agreement could have been resolved by simply reading the document prior to signing it. If a party can read it, it behooves him to examine an instrument before signing. *Henderson*, *supra*. We find the Cooks' argument regarding fraud to be unpersuasive. For the foregoing reasons, we find that the Cooks' first assignment of error is without merit.

11

**Second Assignment of Error: The trial judge erred in ordering an accounting.**

In their second assignment of error, the Cooks argue that the trial court erred in ordering an accounting because Springbok did not request an accounting in its petition. A court has discretion to allow enlargement of the pleadings to conform to the evidence. La. C.C.P. art. 1154. A final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contains no prayer for general and equitable relief. La. C.C.P. art. 862.

In the present matter, Springbok's petition included a prayer to recover reasonable damages stemming from the breach of contract and for relief as the court may deem just and equitable. In its judgment, the trial court ordered a full and complete accounting of any income, production, royalties, or any other funds related to the right, title, and interest in the 111.1277 net mineral acres in the subject property since December 1, 2020, the date the mineral deed was to be executed under the Letter Agreement. Springbok prayed for any relief that the trial court felt was just and equitable, and an accounting of potential costs to be reduced from the purchase price due to the breach of contract is appropriate.

Springbok was buying the mineral production, which corresponded with ownership of the mineral interest, from a specific date forward for a specific price. Any infringement or depletion of that mineral production income stream after the effective date of the Letter Agreement must be accounted for if the parties are to be placed in the positions they negotiated for and to which they agreed. The Cooks are entitled to the purchase price,

and Springbok is entitled to mineral production income, the longevity and value of which decreases with every passing day of production. The trial court was authorized to order an accounting. This assignment of error likewise lacks merit.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment and assess all costs to Ralph Cook and Sheryl Cook.

**AFFIRMED.**