Judgment rendered November 15, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,328-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CITY OF RUSTON                                    Plaintiff-Appellant

versus

WOMACK & SONS                                     Defendants-Appellees
CONSTRUCTION GROUP, INC.

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 61,968

Honorable Thomas Wynn Rogers, Judge

* * * * *

LAW OFFICES OF RUSSELL                            Counsel for Appellant
ALAN WOODARD, JR., LLC
By: Russell Alan Woodard, Jr.

KEAN MILLER, LLP                                  Counsel for Appellees
By: Michael D. Lowe
    G. Trippe Hawthorne
    Thomas D. Bourgeois, Jr.

* * * * *

Before THOMPSON, ROBINSON, and MARCOTTE, JJ.

ROBINSON, J., dissents with written reasons.

**THOMPSON, J.**

In the middle of a large-scale construction project to create a sports complex, the city of Ruston was faced with a difficult business decision regarding the synthetic field turf playing surfaces on some of the baseball fields. It could either stay the course on the original design, which would delay the completion date and cause it to lose out on hosting a lucrative inaugural event, or it could modify the design plan to complete the project timely, which option included a request from the contractor for additional construction funds for the new design. The city elected the modified construction design and faster completion date, signed a change order for the revision, and paid the requested added cost for the revision. The project was completed on time, and the city hosted the event, resulting in an economic boon for the city and area businesses. Subsequently, the city sought to recover the additional costs it paid to the contractor, which, in turn, argued that a clause in the construction contract acted as a final settlement for all claims regarding the change order and that it is not required to refund the funds paid for the revision to the project. The trial court granted a summary judgment in favor of the contractor, and the city appealed. For the reasons set forth below, we affirm the trial court.

## FACTS AND PROCEDURAL HISTORY

In an effort to expand recreational facilities, generate economic impact for the region and tax revenue for itself, the City of Ruston (the "City") contracted to host the 2019 Dixie World Series. To host this and potential future large-scale events, the City designed and put out for bid the Ruston Sports Complex, which comprised of four different complexes

and facilities, and included 16 baseball fields.  On August 31, 2017, the City

awarded the approximately $35,000,000 public construction contract to

build the complex on U.S. Highway 167 South in Ruston (the "Project") to

Womack & Sons Construction Group, Inc. ("Womack").  The architect for

the Project was Yeager, Watson & Associates, LLC ("YWA").  This dispute

arises from that part of the Project concerning the construction of the

synthetic field turf playing surfaces on some of the fields.  The Project had a

425-day deadline, to enable the City to satisfy its contractual obligations to

host the Dixie League World Series in July, 2019. The World Series was

anticipated to generate over $6,000,000 in economic impact.

On September 26, 2017, the parties executed a written contract

outlining their rights and obligations on the Project.  The contract is a

standard form contract prepared by the American Institute of Architects,

known as the AIA Document A101-2007, Standard Form of Agreement

between Owner and Contractor (the "Contract").  Several other documents

were incorporated into the Contract.  Article 1 of the Contract describes the

other documents, including (1) Conditions of the Contract (General,

Supplementary, and other Conditions), (2) Drawing Specifications, (3)

Addenda issued prior to execution of this Agreement, and (4) Modifications

issued after execution of this Agreement, "all of which form the Contract,

and are as fully a part of the Contract as if attached to this Agreement or

repeated herein."  The General Conditions are on a standard-form document

prepared by the American Institute of Architects-AIA Document A201-

2007, General Conditions of the Contract for Construction (the "General

2

Conditions"). The Supplementary Conditions were prepared by YWA and were included within the Project Manual.

The General Conditions allowed for changes to be made to the Contract during construction, a commonly anticipated occurrence in large construction projects. Article 7 of the General Conditions provided:

> Changes in the Work may be accomplished after execution of the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

Article 7.1.2 of the General Conditions states that "a Change Order shall be based upon agreement among the Owner, Contractor and Architect."

Article 7.2.1 defines a Change Order as:

> A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect stating their agreement upon all of the following:
>
> .1     The Change in the Work;
> .2     The amount of adjustment, if any, in the Contract Sum; and
> .3     The extent of the adjustment, if any, in the Contract Time.

As noted above, the Supplementary Conditions modify the General Conditions. Article 7.2 of the Supplementary Conditions adds Subparagraph 7.2.2 to Article 7.2 of the General Conditions, and states:

> Agreement on any change order shall constitute a final settlement of all matters relating to the change in the Work which is the subject of the Change Order, including, but not limited to all direct and indirect costs associated with such change and any and all adjustments to the Contract Sum and the Contract Time. In the event a Change Order increases the Contract Sum, Contractor shall include the Work covered by such Change Order in Applications for Payment.

There were five change orders executed in connection with the Project. The change order at issue in the present matter is Change Order No.

2, which was executed in February of 2019. Change Order No. 2 directed Womack to make 16 changes to the project. It added 139 days to the contract time to accommodate the changes and inclement weather. The original contract sum was increased by $1,779,682.33 to address the modifications outlined in Change Order No. 2. YWA prepared and executed Change Order No. 2 on February 6, 2019. Womack executed it on February 7, 2019, and the City executed it on February 18, 2019. It was recorded in Lincoln Parish on February 22, 2019.

Change Order No. 2 was required for the Project in order to correct a problem with the subsurface installed under the turf fields in five of the baseball fields at the sports complex. Womack had hired a subcontractor, GeoSurfaces ("Geo"), to install the subsurface base and the turf fields in accordance with the original contract. The Project design originally called for compacted dirt, topped with a geomembrane liner, a drainage pad, and rock. The turf was to be placed on top of the subsurface.

In the late fall of 2018, Geo and Womack discussed the fact that there was a leak in the geomembrane liner of five of the fields from rain. The record reflects an email between Womack and Geo, wherein Womack states that *"I do not want any inspectors noticing and causing a problem"* regarding the wet subsurface liners and discussing possible solutions for the problem. The parties dispute whether the cause of the wet subsurface liners was the rainy weather or Womack's poor workmanship.

In January of 2019, Womack shared with YWA the fact that the subsurface layer of these fields was wet and the turf could not be laid over the wet subsurface. Any resolution over the passage of time that Womack

4

may have hoped for never materialized, and the problem remained.  YWA informed the City of the situation and explained that the only remedy under the current specifications was to peel back the liner and let the underlying foundation dry out.  The City felt that although this proposed resolution would resolve the problem as originally engineered in the Project, the added delay was an undesirable option because it would take too long and potentially disrupt its contract to host the approaching Dixie Youth World Series.  In the alternative, Womack and Geo suggested a base system, using concrete, which could be installed on top of the subsurface already in place.  This would allow the turf to be installed without the need to take any additional action or delay.

YWA issued a memorandum to Womack and the City on February 1, 2019, confirming the use of the GeoBase structural system and suggested that the change should be at no additional cost to the City.  It opined that the changes being made to the Project plans were due to Womack's lack of attention and timely responsiveness throughout the project.  Womack objected to the suggestion that the new base should be added at no cost to the City.  It asserted the fields could be completed as originally designed and planned in the Project but noted that additional time would be required to address the conditions, understandably apparently more concerned with its obligation and contract with the City, and not as concerned by any contract the City may have entered with Dixie Little League.

A site visit was held on February 5, 2019, and afterwards, the mayor of the City approved the inclusion of the GeoBase system.  The approval was relayed by Womack to YWA, along with the pricing for the change.

Womack states that they discounted its portion of the cost associated with the new GeoBase system by 50%.

As noted above, Change Order No. 2 was executed by the parties in February of 2019, and the City paid the amount owed and outlined in the document. The City argues that Change Order No. 2 does not discuss a settlement or release. It contends that it paid the money to Womack so that Womack could pay Geo, "with the understanding that Ruston and Womack would 'get square' later." An affidavit provided by the City states that "[a]t all times, Ruston's intentions were clearly expressed: Ruston would pay Womack the amount stated under Change Order #2 [which Womack would immediately pay its turf subcontractor Geo] to get the Project completed in time for Ruston to host the World Series." The parties agree that, using the new subsurface system, the work was timely completed to allow the City to successfully host the World Series, generating millions of dollars in economic impact and significant tax revenue for the City.

On October 8, 2021, the City filed suit against Womack, alleging breach of contract and seeking a refund on the $1,779,682.33 included in Change Order No. 2. On January 12, 2022, Womack filed a motion for summary judgment, seeking dismissal of the claims against it pursuant to the language in Section 7.2.2 of the Contract. Womack also filed a motion for protective order to not have to produce the voluminous discovery requested by the City. Both motions were heard by the trial court on June 20, 2022. The City argued that the motion for summary judgment was premature because it had not had the opportunity to conduct discovery, and Womack

argued that the plain language of the contract required dismissal of the City's claims. The trial court took the matter under advisement.

On June 27, 2022, the City filed a motion for leave to file a first supplemental/amended petition (the "motion to amend"). Womack argued this motion to amend was really a supplemental opposition to its motion for summary judgment. The trial court set a hearing on the matter for August 25, 2022. On July 8, 2022, the trial court issued a ruling continuing further consideration of the motion for summary judgment in order to give the City the opportunity to conduct discovery related to the issues raised in the motion. After a request for an extension was filed by both parties, the trial court set the hearing date for both the motion for summary judgment and the motion to amend on November 17, 2022. In the interim, discovery was conducted by the City.

After arguments at the motion for summary judgment hearing, the trial court denied the City's motion to amend and took the motion for summary judgment under advisement. On January 9, 2023, the trial court granted Womack's motion for summary judgment, finding that the contract as a whole was clear, explicit, and will not lead to absurd consequences. It found no evidence of fraud and rejected the City's attempt to introduce parol evidence regarding the meaning of the contract and the intent of the parties. It ultimately concluded that the City made a business decision to continue on with the amended Project plans and chose pay for the new subsurface product. This appeal by the City followed.

DISCUSSION

The City asserts five (5) assignments of error from the ruling of the trial court. The City's first three assignments of error all relate to the trial court's ruling on the motion for summary judgment and the parties' intent. As such, we will address them together.

**First Assignment of Error: The trial court erred by ignoring material factual disputes to impermissibly evaluate the parties' credibility and intent.**

**Second Assignment of Error: The trial court erred by misinterpreting a single sentence of the contract, which renders 19 other sections meaningless: a patent violation of the "Cardinal Rule" that contracts be interpreted to harmonize provisions to give them meaning and effect.**

**Third Assignment of Error: The trial court erred by holding Ruston responsible for a $1.8 million problem caused by Womack.**

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Springbok Royalty Partners, LLC v. Cook*, 54,788 (La. App. 2 Cir. 11/16/22), 351 So. 3d 850, *writ denied*, 22-01832 (La. 4/14/23), 355 So. 3d 614. A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Schultz v. Guoth*, 10-0343 (La. 1/19/11), 57 So. 3d 1002. The procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2).

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of

8

law.  La. C.C.P. art. 966(A)(3).  A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute.  A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.  *Maggio v. Parker*, 17-1112 (La. 6/27/18), 250 So. 3d 874; *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876, *cert. denied*, 574 U.S. 869, 135 S. Ct. 197, 190 L. Ed. 2d 130 (2014); *Springbok*, *supra*.  In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence.  *Springbok*, *supra*.

The burden of proof rests with the mover.  Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense.  The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.  La. C.C.P. art. 966(D)(1).  Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  La. C.C.P. art. 967(A).  When a motion for summary judgment is made and supported as provided above, an adverse

9

party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B).

When a contract can be construed from the four corners of the instrument, interpretation of the contract presents a question of law that can be decided on summary judgment. *Sequoia Venture No. 2, Ltd. v. Cassidy*, 42,426 (La. App. 2 Cir. 10/10/07), 968 So. 2d 806, *writ denied*, 07-2210 (La. 1/11/08), 972 So. 2d 1166.

The City argues in its first assignment of error that there are many factual disputes in the present matter, specifically concerning the parties' intent. In support of its argument, the City cites Chase Womack's deposition and affidavit and the letter sent by YWA to Womack in anticipation of Change Order No. 2. In its second assignment of error, the City contends that the trial court's ruling renders the Contract meaningless under the Cardinal Rule, *i.e.* that a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. Finally, in its third assignment of error, the City argues that requiring it to pay almost 1.8 million dollars for work caused by Womack's error is an absurd result.

Under Louisiana law, contracts are interpreted according to the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear, explicit, and lead to no absurd consequences, no further interpretation need be made in search of the parties' intent. La. C.C. art.

10

2046.  The City argues that there are disputes between the parties regarding the cause of the damage to the original fields, which party would pay for the new fields, and the parties' agreements thereto.  However, interpretation of a contract within the instrument's four corners is a matter of law, and the use of extrinsic evidence is proper only if a contract is ambiguous after an examination of the four corners of the agreement.  *Frierson v. Stephens, Inc.*, 55,115 (La. App. 2 Cir. 8/9/23), --- So. 3d ---, 2023 WL 5065900.  A contract is ambiguous when it lacks a provision bearing on the issue, its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions, or the parties' intent cannot be ascertained from the language used.  *Campbell v. Melton*, 01-2578 (La. 5/14/02), 817 So. 2d 69; *Sequoia Venture*, *supra*.  A provision is not considered ambiguous merely because one party creates a dispute about it.  *Campbell*, *supra*.

A review of the record reveals that the terms of the Contract are clear, explicit, and lead to no absurd consequences.  Section 7.2.2 unambiguously states that an agreement to a change order shall constitute a *final settlement* of all matters relating to the change order, including all costs associated with the change and all adjustments to the contract sum.  Change Order No. 2 clearly states that the additional work to be performed under Change Order No. 2 will cost the City $1,779,682.33.  Change Order No. 2 includes the undisputed signatures of representatives of YWA, Womack, and the City.

Unexpressed intentions or desires, not included in the written agreement of the parties, do not create an ambiguity.  The City has not explicitly argued that the terms of the contract are ambiguous, but rather,

directs this Court to numerous provisions that it contends will be "neutralized" by the enforcement of Section 7.2.2 and Change Order No. 2. We find no ambiguity in the terms of the Contract. The portions of the Contract cited by the City are provisions that would have allowed the City to take action against Womack for the alleged poor workmanship on the disputed fields. However, the record is clear that the City chose not to avail itself of these provisions and, instead, negotiated a new option with Womack for the disputed fields, which involved an additional cost for different materials and a different design than originally planned.

The record reflects that the City had several options when faced with what it now asserts as the alleged poor workmanship from Womack, including but not limited to: (1) seeking to enforce the provisions it has cited from the Contract, which would have mandated Womack correct the work at its own expense; (2) suing Womack for breach of contract; and (3) refusing to sign Change Order No. 2 without a reservation of rights. These are sophisticated parties with ready access to legal counsel, and the City had the benefit of YWA recommending it should not obligate itself to pay for the costs associated with the change of the scope of the project. Rather than availing itself of the advice of the supervising architect and any of the options listed above, the City chose to sign Change Order No. 2, which was clearly subject to Section 7.2.2, and also elected to pay the additional cost described within the Change Order.

As noted by the trial court, this was a business decision related to the City's need to have completed baseball fields in time for the Dixie League World Series. It is understandable that the City is unhappy it paid almost 1.8

12

million dollars for additional work that it feels would not have been necessary but for Womack's poor workmanship. However, Louisiana law states that when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of words of a contract into harmony with a supposed reasonable intention of the parties. *Prejean v. Guillory*, 10-0740 (La. 7/2/10), 38 So. 3d 274. Further, the fact that one side made a "bad deal" is not an "absurd consequence" that would justify rescinding the entire contract. *Gibbs Const. Co. v. Thomas*, 500 So. 2d 764 (La. 1987); *KCREW Invest., LLC v. Clark*, 55,092 (La. App. 2 Cir. 5/10/23), 362 So. 3d 1288. Additionally, Womack has steadfastly declared the change in the scope of work and additional costs associated therewith were not its responsibility under the original Contract without added compensation.

The record reflects that the parties disagreed about the cause of the problems with the disputed fields and which party should pay for those problems. However, the parties knew of these issues before signing Change Order No. 2, and the language of the Contract is clear and unambiguous. Any unresolved issues either party asserts remained were resolved when the language of Change Order No. 2 was finalized and the parties signed it and proceeded with the work outlined. The trial court and this court cannot bend the meaning of words of a contract. Accordingly, the City's first three assignments of error are without merit.

**Fourth Assignment of Error: The trial court erred by refusing to consider the context surrounding the second change order; it is clouded with errors, fraud, financial duress, and an absence of consideration/causation.**

13

In its fourth assignment of error, the City argues that all of the listed vices of consent exist in the present matter. Louisiana law provides that a contract is formed by the consent of the parties. La. C.C. art. 1927. However, consent may be vitiated by error, fraud, or duress. La. C.C. art. 1948. We will discuss each below.

### Error

The City contends that there was no meeting of the minds between itself and Womack regarding Change Order No. 2, which is actionable error pursuant to La. C.C. arts. 1949 and 1950. Louisiana law provides that error vitiates consent only when it concerns a cause without which the obligation would not have incurred and that cause was known or should have been known to the other party. La. C.C. art. 1949; *Peironnet*, *supra*. Unilateral error will not vitiate consent to a contract if the error was inexcusable. *Id*. The Louisiana Supreme Court stated in *Peironnet*, *supra*:

> It seems quite clear that, unless induced to do so by outright fraud, a party who signs an instrument without reading it thereby fails to exercise elementary prudence that, if observed, would have prevented him from making his alleged error. As such contract-making conduct cannot be excused, so the resulting error cannot be excused either.

We find no evidence of error in the present matter. As discussed above, the Contract is clear and unambiguous and the City has not named a specific error that would vitiate consent. The result of being held to the negotiated terms of Change Order No. 2 and the Contract may not have been what the City ultimately wanted once the Dixie League World Series was completed, but that does not satisfy the requirements of the vice of consent of "error" as contemplated by Louisiana jurisprudence.

14

## Fraud

As to fraud, the City argues that Womack made material misrepresentations and failures to disclose that amount to fraud regarding the state of the subsurface of the disputed fields between November 1, 2018 and January 9, 2019. The City contends that Womack's intention was to hide and misrepresent facts so that it did not have to correct the work done to the fields according to the original plans and that but for these misrepresentations, Change Order No. 2 would not have existed.

Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. C.C. art. 1953. Fraud may also result from silence or inaction. When fraud is based on silence or suppression of the truth, the plaintiff must prove a duty to speak or disclose the information. *Priority Hosp. Group, Inc. v. Manning*, 53,564 (La. App. 2 Cir. 9/23/20), 303 So. 3d 1106, *writ denied*, 20-01238 (La. 1/20/21), 308 So. 3d 1160. However, fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. *Id.* The circumstances constituting fraud must be alleged with particularity. La. C.C.P. art. 856. There are three basic elements to an action for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) with the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of)

the contract. *Murray v. Bostwick*, 52,802 (La. App. 2 Cir. 8/14/19), 276 So. 3d 1120.

We find the high standard set forth above has not been satisfied in the present matter. The record reflects one email between Womack and Geo, wherein a representative of Womack stated that he did not want inspectors at the site while they worked on the problem. It is undisputed that the City was aware of the problem with the wet liners on the fields before it signed Change Order No. 2, and in fact, the record is clear that Womack, the City, and YWA had meetings and discussed potential options prior to signing Change Order No. 2. The City contends that Womack was deceptive in not disclosing the fact that there was a problem with the liners when it was discovered in November, rather than waiting for January. As outlined previously, the City had numerous remedies available to it at that point. Due to the pending obligations to host the Dixie League World Series, the City elected to proceed with a different product and its faster date of completion. Even if the omission by Womack rose to the level of fraud, the City could have ascertained the truth without difficulty, inconvenience, or special skill.

## Duress

Finally, the City argues that by the time Womack disclosed the problems with the field, it had no other practical alternative to Change Order No. 2, which amounts to financial duress. The pressure to complete the fields pursuant to the original deadline was caused by the City's reasonable desire to have the fields completed in time for the World Series. That separate contract and related implications has no bearing on the clear language of the four corners of the Contract for the Project.

16

Consent to a contract is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation. Age, health, disposition, and other personal circumstances of a party must be taken into account in determining reasonableness of the fear. La. C.C. art. 1959. The threat of doing a lawful act or exercising a right does not constitute duress. *Vogler v. Ayres*, 54,734 (La. App. 2 Cir. 8/17/22), 345 So. 3d 1184.

In support of its argument, the City cites *Wolf v. Fair Grounds Corp.*, 545 So. 2d 976 (La. 1989), wherein jockeys who wished to race at a track were required to sign an agreement waiving their right to sue the track for negligence resulting in personal injury and limit their claims to worker's compensation. The Louisiana Supreme Court held that because of the superior bargaining strength of the track and the economic vulnerability of the jockeys, it was reasonable to conclude that the jockeys would have felt forced into signing the contract. The court found this particular situation met the level of duress required to vitiate consent to the contract. *Id.*

Here, unlike in *Wolf*, *supra*, the City, YWA, and Womack were sophisticated parties who negotiated Change Order No. 2 prior to signing the document. The City certainly had the same, if not greater, bargaining strength than Womack. While the City may have felt some economic stress to have the fields completed on time for the World Series, that alone is not sufficient to constitute duress as contemplated by Article 1959. Here, any stress the representatives of the City may have experienced to satisfy its obligations to have the fields ready does not equal the vice of consent of duress.

There is clear evidence of consent by all parties to the Contract and Change Order No. 2 in the record. The record does not reflect any evidence sufficient to satisfy the standard for vices of consent under Louisiana law, and as such, this assignment of error is without merit.

**Fifth Assignment of Error: The trial court manifestly erred by denying Ruston's request to amend and supplement its petition even because (1) it was Ruston's first and only request, (2) Womack filed no opposition, (3) suit had been pending for only 8 months, and (4) it was based on newly discovered facts.**

Finally, the City argues that the trial court erred in denying its motion to amend and supplement its petition because it was the City's first request to amend, suit had only been pending for eight months, it was based on newly discovered facts, and Womack allegedly did not oppose the motion.

The law takes a liberal approach to allowing amended pleadings to promote the interests of justice. *Walton v. Burns*, 47,388 (La. App. 2 Cir. 1/16/13), 151 So. 3d 616. Amendment is generally allowed, provided the mover is acting in good faith, the amendment is not sought as a delaying tactic, the opponent will not be unduly prejudiced, and trial of the issues will not be unduly delayed. *Giron v. Housing Auth. of City of Opelousas*, 393 So. 2d 1267 (La.1981); *Bilyeu v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 50,049 (La. App. 2 Cir. 9/30/15), 184 So. 3d 69, *writ denied*, 15-2277 (La. 2/19/16), 187 So. 3d 462. However, a trial court has broad discretion in ruling on motions to amend pleadings, and a decision to accept or reject an amendment should not be disturbed on appeal absent abuse of that discretion. *Aymond v. Citizens Progressive Bank*, 52,623 (La. App. 2 Cir. 6/26/19), 277 So. 3d 477, *writ denied*, 19-1200 (La. 10/15/19), 280 So. 3d 602.

18

While the motion for summary judgment was pending at the trial court, the City sought to amend its petition to include the following claims: (1) no cause or meeting of the minds pursuant to La. C.C. art. 1967; (2) substantial inequity adjustment per Section 7.3.4; (3) economic duress; and (4) cardinal change. After the motion to amend was filed, the trial court granted the City's motion for discovery, allowed time for additional discovery, and each party filed additional briefs related to the pending motion for summary judgment. Those briefs included arguments related to the above claims. The record reveals the trial court considered those claims in its ruling on the motion for summary judgment. Under the facts of this case, we cannot say the trial court abused its discretion in denying the motion to amend. This assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, the ruling of the trial court is affirmed. Costs of this appeal are assessed to the City of Ruston.

**AFFIRMED.**

**ROBINSON, J., dissenting**.

I respectfully dissent from the majority opinion. A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Reynolds v. Bordelon*, 14-2371 (La. 6/30/15), 172 So. 3d 607. Appellate courts review motions for summary judgment de novo, using the same criteria that govern the district court's determination of whether summary judgment is appropriate. *Id.* I find that there are genuine issues of material fact.

As stated in the majority's opinion, the City entered into a contract with Womack on September 26, 2017, to construct the Ruston Sports Complex with a provision stating that the project was to be completed within 425 days. Prior to this contract, the City entered into a contract with Dixie Baseball to host the Dixie Youth World Series in July, 2019. Womack was aware of this deadline when they entered into this contract to construct the complex, knowing time was of the essence.

In the Fall of 2018, Womack discussed with its subcontractor, Geo, a problem with the liner on the fields allowing water to infiltrate the turf, causing problems. This was not brought to the attention of the City or the City's architect until January, 2019, only six months prior to the beginning of the World Series. This delay was, in fact, a major contributor to the entry of change order #2. Had this information been shared with the City or its architect upon discovery, then the City possibly would have been able to exercise one of the several options stated by the majority in the opinion. The

1

delay in informing the City or the architect of this problem amounted to duress on the part of Womack. Furthermore, the email between Womack and Geo stating that, *"I do not want any inspectors noticing and causing a problem,"* further evidences the fact that this knowledge was withheld. The City's architect, upon realizing there was a problem, stated that any costs associated with remedying the problem should not be paid by the City. The architect recognized, and even stated, that the delay and poor workmanship was the reason for the change order #2.

Knowing the timeframe under which the City was operating, and failing to disclose the defects in a timely manner, amounted to duress on the part of Womack. By the time the City was informed of these defects, there was no other option than to enter into change order #2 because of the contract with Dixie Baseball. The majority states that this contract has no bearing on the contract between Womack and the City and that any economic distress felt by the City does not constitute duress. I disagree. Womack entered into this contract knowing that time was of the essence. Any delays caused by Womack should have been considered in applying the standard for summary judgment.

In my opinion, genuine issues of material fact exist and preclude summary judgment. I believe that the trial court should be reversed and the matter remanded for further proceedings.